EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico | Certiorari |
| Peticionario | |
| v. | 2013 TSPR 52 |
| Alberto De Jesús Mercado | 188 DPR ____ |
| Recurrido | |

Número del Caso: CC-2011-1047

Fecha: 2 de mayo de 2013

Tribunal de Apelaciones:

       Región Judicial de San Juan, Panel IV

Oficina del Procurador General:

       Lcdo. Luis R. Román Negrón
       Procurador General

       Lcda. Jannelle M. Laforet Matos
       Procuradora General Auxiliar

Abogado de la Parte Recurrida:

       Lcdo. Luis A. Pabón Rojas

Materia: Sentencia con Voto Disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico                                 Certiorari
      Peticionario

      v.

Alberto De Jesús Mercado              CC-2011-1047
      Recurrido


SENTENCIA

En San Juan, Puerto Rico, a 2 de mayo de 2013.

En el recurso ante nuestra consideración el Tribunal de Apelaciones revocó una sentencia del Tribunal de Primera Instancia que declaró al Sr. Alberto De Jesús Mercado (señor De Jesús o el recurrido) culpable de los delitos de agresión[1] y alteración a la paz.[2] Como fundamento para su dictamen, el foro intermedio puntualizó que no le otorgó credibilidad al testigo del Ministerio Público y adujo que su testimonio fue uno estereotipado. De ese proceder recurre el Procurador General, únicamente en lo referente a

---

[1] Art. 121 del Código Penal de Puerto Rico de 2004, 33 L.P.R.A. sec. 4749.
[2] Art. 247 del Código Penal de Puerto Rico de 2004, 33 L.P.R.A. sec.4875.

la revocación del fallo de culpabilidad por el delito de agresión. Por considerar que el tribunal apelativo intermedio abusó de su discreción al sustituir el criterio de apreciación de la prueba del juez sentenciador, revocamos parcialmente la sentencia recurrida.

I

El 27 de enero de 2011 tuvo lugar una manifestación estudiantil en áreas cercanas al Capitolio de Puerto Rico. Ese día, el agente Víctor Ortiz Nevárez (agente Ortiz) – agente de la Policía de Puerto Rico adscrito a la División de Ciclismo del Precinto 166 de Puerta de Tierra, en el Municipio de San Juan– tenía la tarea de patrullar en el área. Su responsabilidad era velar por la seguridad en general, desviar el tránsito en las avenidas que se encontraran obstruidas, y notificar a su supervisor sobre cualquier situación anómala que se presentara.[3]

Así las cosas, trascendió que ocurrió un incidente entre el agente Ortiz y el señor De Jesús. Esa situación la investigó el agente Luis Serrano Cabán (agente Serrano Cabán), quien redactó el Informe de Incidente.[4] En ese informe, el agente Serrano Cabán expuso que el 27 de enero de 2011 el agente Ortiz arrestó al señor De Jesús porque este último había agredido al primero. También consignó que a consecuencia de ello, Ortiz acudió al Centro de Diagnóstico y Tratamiento de Santurce, donde el médico de

---

[3] Véase, Transcripción de la prueba oral, págs. 23-24,26.
[4] Véase, Informe de Incidente, Exhibit 1 de la defensa.

turno le diagnosticó laceraciones y contusiones en diferentes partes del cuerpo.

Ante lo acontecido, el 18 de febrero de 2011 el Ministerio Público presentó dos denuncias contra el señor De Jesús, imputándole los delitos de agresión en su modalidad menos grave y alteración a la paz.[5] El juicio en su fondo fue celebrado los días 23 de marzo, 14 de abril y 17 de mayo de 2011. Como parte de la prueba de cargo, el Ministerio Público presentó el testimonio del agente Ortiz. Por su parte, la defensa ofreció los testimonios del agente Serrano Cabán[6] y del Sr. Carlos Pérez Figueroa. También, se presentó como evidencia una grabación hecha en vídeo por este último testigo, el Informe de Incidente, y fotografías que recogían parte de los incidentes de ese día. De conformidad con la transcripción de la prueba oral, pasemos a examinar los testimonios pertinentes a la controversia que nos ocupa, ya que como explicamos, el Estado recurre únicamente de la sentencia revocatoria relacionada al delito de agresión. Veamos.

Durante el examen directo, el agente Ortiz declaró que el día de los hechos, mientras patrullaba por la calle San Agustín cerca de las 5:50 p.m., vio al señor De Jesús corriendo una bicicleta.[7] Señaló que previamente se había percatado de la presencia de este en el área, pero que no

---

[5] Apéndice de la petición de *certiorari*, págs. 259-260.
[6] Durante el juicio, el Ministerio Público manifestó que no utilizaría al testigo Luis Serrano Cabán, por lo que lo puso a disposición de la defensa. Véase, Transcripción de la prueba oral, págs. 100-101.
[7] Íd., pág. 29.

había intercambiado palabra alguna con él.[8] Continuó relatando que en el momento en que lo divisó en la mencionada calle, el señor De Jesús miró hacia atrás y le profirió palabras obscenas.[9] Atestó que cuando eso ocurrió, ambos se encontraban separados por una distancia de aproximadamente 10 a 20 pies.[10] Afirmó que tras escuchar los insultos le ordenó al recurrido que se detuviera. Según testificó, el señor De Jesús hizo caso omiso a su requerimiento, por lo que aceleró el paso.[11]

En cuanto a lo sucedido posteriormente, el agente Ortiz declaró lo siguiente: "[c]uando él nota que ya estoy cerca de él, se baja por el lado izquierdo de la bicicleta y empuja con sus manos su bicicleta hacia mis pies".[12] El testigo afirmó que para ese momento ya se había bajado de su bicicleta acorde a una técnica específica con la cual entrenan a los oficiales del orden público.[13] Empero, añadió que debido al impacto que recibió intentó caminar pero perdió el balance, cayendo al pavimento y recibiendo laceraciones en la rodilla izquierda, en el codo izquierdo y en el tobillo derecho.[14] Luego, describió que en ese instante logró "agarrar" por la camisa al señor De Jesús y que así cayeron ambos al suelo sobre la bicicleta que

---

[8] Íd., pág. 66.
[9] Íd., págs. 30-31.
[10] Íd. Véase también, págs. 53 y 65.
[11] Íd., pág. 32.
[12] Íd., págs. 32-33.
[13] Íd., págs. 34, 38 y 71.
[14] Íd.

había empujado este último.[15]   A preguntas de la fiscal, el testigo así lo narró:

> Fiscal: ¿Cómo? Indíquele a la Señora Juez a que usted se refiere. Por favor indíquenos.
>
> Testigo: Él se bajó por el lado izquierdo de su bicicleta y al bajarse del lado izquierdo, queda la bicicleta de él frente de él. Al yo bajarme de la mía, él empuja la de él hacia mis pies.
>
> Fiscal: ¿Y qué sucede?
>
> Testigo: Pues, intenté caminar, y al bloquearme la bicicleta los pies, perdí el balance.
>
> Fiscal: ¿Y qué sucedió?
>
> Testigo: Fui a caer al suelo.[16]

Por último, el agente Ortiz declaró que a la escena llegó el agente Gregorie Robledo, quien lo ayudó a neutralizar al señor De Jesús, y que en ese instante arribaron cerca de cuarenta estudiantes a lanzarle piedras.[17]

En el contrainterrogatorio, la defensa confrontó al agente Ortiz con la versión que había ofrecido en una declaración jurada que prestó para el caso. En la misma, el agente Ortiz declaró que el señor De Jesús "se desmont(ó) por el lado izquierdo de su bicicleta y a la vez empuj(ó) con sus manos su bicicleta roja hacia (sus) pies".[18]   En lo pertinente, la defensa formuló las siguientes preguntas:

> Defensa: "Porque su bicicleta impactó mis pies". Vamos a ver si entendemos eso.  Usted nos ha

---

[15] Íd., pág. 34.
[16] Íd.
[17] Íd., págs. 34-35.
[18] Íd., pág. 69.

dicho que él se baja de su bicicleta por el lado izquierdo. Que él se baja cuando usted está acercándose a él.

Agente: Correcto.

…

Defensa: ¿Usted aceleró, verdad? Ha dicho que usted aceleró cuando alegadamente le profirió las palabras.

Agente Ortiz: Es correcto.

Defensa: ¿Y cuando usted se va acercando, que está cerca, él se baja de la bicicleta por su lado izquierdo?

Agente Ortiz: Correcto

Defensa: Usted intenta caminar. ¿Pero cómo? Usted está en la bicicleta.

Agente Ortiz: Le expliqué que…

Defensa: Usted no se ha bajado de la bicicleta. Usted intentó caminar cómo. ¿Intenta caminar usted a la vez que va pedaleando la bicicleta o cómo es eso?

Agente Ortiz: Nosotros cogemos adiestramiento que nos enseña cómo bajarnos de la bicicleta. Se llama el crossover disbound. Yo levanto el pie derecho mío y me quedo en el pedal del lado izquierdo

…

Agente Ortiz: Pongo un pie en el piso, suelto mi bici y sigo caminando.[19]

En el interrogatorio la defensa indagó, también, sobre los movimientos del agente antes de la agresión.

Defensa: Entonces, él se baja por su parte izquierda. Está frente a usted.

Agente Ortiz: Correcto.

Defensa: Usted viene en la bicicleta y usted trata de caminar.

---

[19] Íd., págs. 70-72.

Agente Ortiz: No. Yo caminé.

Defensa: ¿Caminó?

Agente Ortiz: Yo me baje de mi bicicleta y solté mi bicicleta.

Defensa: Perdón, perdón.

Agente Ortiz: Solté mi bicicleta y seguí caminando. Justamente cuando estaba cerca de él, él suelta su bicicleta y la empuja con sus manos.

Defensa: Ahora me va a buscar en esa Declaración Jurada que usted prestó para los hechos de este caso, dónde usted dice que soltó su bicicleta. ¿Verdad que no lo dice?

Agente Ortiz: No lo dice.

Defensa: ¿Y verdad que tampoco en esa Declaración Jurada dice que usted soltó su bicicleta y caminó hacia él?

Agente Ortiz: no lo dice.

Defensa: Lo está diciendo hoy por primera vez. ¿Y yo le pregunto, usted caminó o no llegó a caminar?

Agente Ortiz: Caminé.

Defensa: Caminó. ¿Y usted lo que ha dicho en la mañana de hoy, a preguntas de la compañera, es que usted trató de caminar y no pudo?

Agente Ortiz: Di los pasos suficientes cuando me bajé de mi bicicleta.

(…)

Agente Ortiz: Cuando di el paso, que él lanza la bicicleta ya no pude caminar.

(…)

Agente Ortiz: Yo iba con el viaje. Cuando me bajo de la bicicleta doy 1 o 2 pasos, que es normal. Ahí cuando me da el impacto con la bicicleta no pude caminar más na'. Caí al piso.[20]

---

[20] Íd., págs. 78 y 79.

Posteriormente, al explicar nuevamente ese suceso, el agente indicó: "Pues, vuelvo y repito. Cuando me bajé de mi bicicleta, que voy en movimiento, lógicamente, doy un paso pa' bajarme de mi bicicleta y ahí me impacta la bicicleta de él".[21] En esencia, ese fue el testimonio que ofreció el testigo de cargo.

La prueba de la defensa puede resumirse como se reseña a continuación:

El agente Serrano Cabán, oficial que confeccionó el Informe de Incidente como parte del procedimiento, señaló que según los datos recopilados la causa para el arresto del señor De Jesús fue la alegada agresión. Afirmó que no presenció los hechos por los cuales se configuró el arresto.[22] También, testificó el Sr. Carlos Alberto Pérez Figueroa, fotoperiodista independiente y documentalista que produjo la grabación en vídeo que fue admitida como evidencia. El testigo admitió que el filme no recoge el incidente que motivó el arresto y declaró que tampoco presenció los hechos de la agresión.[23] Consecuentemente, narró que vio cuando arrestaron al recurrido pero que no observó lo que ocurrió antes de ese incidente.

Luego de escuchar y aquilatar la totalidad de la prueba, el 14 de abril de 2011 el TPI dictó sentencia declarando al señor De Jesús culpable de cometer los delitos de agresión y alteración a la paz. En

---

[21] Íd., pág. 84.
[22] Íd., pág. 109.

consecuencia, le impuso una pena agregada de 117 días multa a razón de $44.00 por día, y la pena especial por cada una de las convicciones.[24]

Inconforme con esa determinación, el señor De Jesús acudió al Tribunal de Apelaciones[25] y alegó en síntesis que el testimonio del agente Ortiz estuvo plagado de contradicciones, omisiones, y lagunas en cuanto a detalles fundamentales de los hechos. Arguyó que no proveyó una declaración coherente en cuanto a la agresión que sufrió por parte del señor De Jesús. Por último, puntualizó que el foro primario no consideró prueba alegadamente exculpatoria, refiriéndose a la grabación en vídeo y a las fotografías que se admitieron en evidencia.

Examinado el recurso, el 14 de noviembre de 2012 el foro apelativo revocó los fallos de culpabilidad contra el señor De Jesús. En lo concerniente al **delito de agresión**, ese foro judicial se limitó a señalar lo siguiente:

---

[23] Íd., págs. 152, 185.
[24] Véase, Sentencia, Apéndice de la petición de *certiorari*, pág. 273.
[25] En su apelación criminal, el Sr. Alberto De Jesús Mercado señaló los siguientes errores:

> Erró el Honorable Tribunal de Primera Instancia en su apreciación de la prueba al declarar culpable a Alberto De Jesús Mercado sin que la prueba de cargos (sic) superara la duda razonable, soslayando las fatales contradicciones, falsedades y lagunas en la prueba de cargos (sic) sobre aspectos esenciales de las acusaciones y desatendiendo la prueba de defensa.

> Erró el Honorable Tribunal de Primera Instancia al declarar culpable a Alberto de Jesus (sic) Mercado al resolver que la frase me cago en tu madre alegadamente proferida a un policía que atendía eventos de desobediencia civil de los estudiantes de la Universidad de Puerto Rico, en un ambiente de tensión (sic) caracterizado por tiros de escopeta con balas de goma, gases lacrimógenos, gas pimienta y corrida a los estudiantes para expulsarlos del área de San Juan, constituyo (sic) una alteración (sic) a la paz del policía

Entendemos que de la prueba presentada no se desprenden los elementos del delito de agresión. Si bien es cierto que el Agente Ortiz declaró haber sufrido unas lesiones corporales a causa de las acciones del señor De Jesús, no olvidemos que el testimonio vertido por este fue uno estereotipado, al cual le otorgamos muy poca credibilidad.

(…)

De las fotos ni del video, admitidos en evidencia, surge que el señor De Jesús hubiese agredido al Agente Ortiz. Por el contrario, en las referidas fotos pudimos apreciar que fue el agente policíaco quien lanzó al suelo al acusado.

Inconforme, el Procurador General comparece mediante recurso de *certiorari* y señala como únicos errores que:

**Erró el Honorable Tribunal de Apelaciones al revocar la sentencia emitida por el Tribunal de Primera Instancia —que declaraba culpable al señor Alberto de Jesús Mercado por infracción al artículo 121 del Código Penal cuando la prueba sostiene que efectivamente este atacó al agente Ortiz Nevárez causándole lesiones a la integridad corporal y/o laceraciones, sustituyendo de esta manera el criterio del Tribunal de Primera Instancia en la apreciación de la prueba.**

**Erró el Honorable Tribunal de Apelaciones al intervenir con la apreciación de la prueba testifical que hizo el juzgador de los hechos en ausencia de pasión, prejuicio, parcialidad o error manifiesto y al revocar la determinación del Tribunal de Primera Instancia a pesar de que la prueba era suficiente y satisfactoria en derecho para declarar al señor Alberto de Jesús Mercado culpable del delito de agresión. [26]**

---

(sic), que afecto (sic) su derecho a la intimidad. Apéndice de la petición de *certiorari,* págs. 248-257.

[26] El recurso ante nuestra consideración se limita a revisar la determinación del Tribunal de Apelaciones en cuanto a la revocación del delito de agresión. Por tanto, no haremos referencia al delito de alteración a la paz. Véase, Petición de *certiorari*, pág. 1, esc. 1.

Previa solicitud, admitimos la petición de *certiorari* como el alegato de la parte peticionaria.[27] El recurrido ha comparecido y en síntesis plantea los mismos argumentos que presentó ante el foro judicial intermedio.

Así pues, contando con el beneficio de la comparecencia de ambas partes, pasamos a la resolución de la controversia de autos. Para ello, es imperativo discutir principios básicos que rigen nuestro ordenamiento jurídico penal.

II

A

Como imperativo constitucional, la sección 11 del Art. II de la Carta de Derechos de la Constitución de Puerto Rico preceptúa que en todos los procesos criminales el acusado disfrutará del derecho a gozar de la presunción de inocencia. Art. 2, Sec. 11, Const. E.L.A., L.P.R.A. Tomo 1, ed. 2008, pág. 343. Esa norma también se incorporó estatutariamente en la Regla 304 de Evidencia que dispone que se presume que toda persona es inocente de delito o falta hasta que se demuestre lo contrario. 32 L.P.R.A. Ap. VI. Pueblo v. García Colón I, 182 D.P.R. 129 (2011). El ordenamiento penal le exige al Estado que para rebatir la presunción de inocencia presente prueba satisfactoria y suficiente en derecho, es decir, "que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido". Íd., pág. 175. La

_____

[27] Véase nuestra resolución de 24 de julio de 2012.

determinación de que cierta prueba es suficiente para evidenciar más allá de duda razonable la culpabilidad del acusado, es una cuestión de raciocinio, producto de todos los elementos de juicio del caso y no una mera duda especulativa o imaginaria. Íd. Véase también, Pueblo v. Irizarry, 156 D.P.R. 782 (2002). En cuanto a ese estándar de "duda razonable" hemos expresado que:

> El Ministerio Fiscal no cumple con ese requisito presentando prueba que meramente sea "suficiente", esto es, que "verse" sobre todos los elementos del delito imputado; se le requiere que la misma sea "suficiente en derecho". Ello significa que la evidencia presentada, "además de suficiente tiene que ser satisfactoria, es decir, que produzca certeza y convicción moral en una conciencia exenta de preocupación" o en un ánimo no prevenido. Esa insatisfacción con la prueba es lo que se conoce como duda razonable y fundada. (Citas omitidas) Pueblo v. Cabán Torres, 117 D.P.R. 645, 652 (1986).

De este modo, la prueba que se presente debe dirigirse a demostrar la existencia de cada uno de los elementos del delito, la conexión de estos con el acusado, y la intención o negligencia de este. Pueblo v. Santiago, et. al., 176 D.P.R. 133, 142 (2009). La evaluación de la prueba de casos criminales debe analizarse cuidadosamente para que no se viole el derecho constitucional de un acusado a que su culpabilidad se establezca más allá de duda razonable. Pueblo v. Acevedo Estrada, 150 D.P.R. 84 (2000).

B

Por su parte, la Regla 110 de Evidencia nos instruye en cuanto a la evaluación y suficiencia de la prueba. 32

L.P.R.A. Ap. VI. De su texto surge que será el juzgador de hechos quien "deberá evaluar la evidencia presentada con el propósito de determinar cuáles hechos han quedado establecidos o demostrados". De acuerdo a ese precepto, eso se hará con sujeción a varios parámetros que allí se enumeran. Entre ellos, el inciso (d) señala que "la evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley". Examinemos el marco doctrinal.

En Pueblo v. Chévere Heredia, 139 D.P.R. 1, 15 (1995), reiteramos que el testimonio de un testigo principal, por sí solo, de ser creído, es suficiente en derecho para sostener un fallo condenatorio, aun cuando no haya sido un testimonio "perfecto", pues "es al juzgador de los hechos a quien le corresponde resolver la credibilidad de un testigo cuando haya partes de su testimonio que no sean aceptables". Esto es así porque en Puerto Rico la máxima *falsus in uno, falsus in omnibus* no autoriza a rechazar toda la declaración de un testigo porque se haya contradicho o faltara a la verdad respecto a uno o más aspectos de su declaración. Quintana Tirado v. Longoria, 112 D.P.R. 276, esc. 9 (1982). En ese sentido, la misión de los tribunales requiere armonizar y analizar en conjunto e integralmente toda la prueba, a los fines de arribar a una conclusión correcta y razonable del peso que ha de concedérsele al testimonio en su totalidad. Íd. Por

esa razón, el hecho de que un testigo incurra en ciertas contradicciones, no significa que deba descartarse absolutamente el resto de la declaración, cuando nada increíble o improbable surge de su testimonio. Pueblo v. Chévere Heredia, supra, pág. 15.

En el precitado caso nos enfrentamos a una situación en la que dirimimos sobre el efecto que tendrían ciertas contrariedades en las que incurrió una testigo, y al justipreciar el asunto, esbozamos que:

> … con excepción de **mínimas** contradicciones insustanciales, nada hay en el testimonio de la niña que sea increíble o inverosímil a tal extremo que haya que descartarlo completamente. Tampoco hay muestra de que el tribunal sentenciador haya errado al creerlo ni que hubiese mediado prejuicio o parcialidad en su apreciación de dicho testimonio. No procede, pues, que intervengamos con la sentencia apelada en este particular. (Énfasis nuestro).Íd., pág. 20.

Por tanto, para que la declaración de un testigo sea creíble la misma no puede ser físicamente increíble, inverosímil o que por las contradicciones o la conducta del testigo en la silla testifical, se haga indigna de crédito. Pueblo v. Pagán Díaz, 111 D.P.R. 608 (1981).

De forma reiterada hemos intimado que nuestro esquema probatorio está revestido por un manto de deferencia hacia las determinaciones que realizan los juzgadores de primera instancia en cuanto a la prueba testifical que se presenta ante ellos. Como regla general, un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el

juzgador de los hechos, ni tiene facultad de sustituir las determinaciones del foro primario por sus propias apreciaciones. Pueblo v. García Colón, supra. Este Tribunal ha reafirmado que las determinaciones de hechos del Tribunal de Primera Instancia que estén sustentadas en **prueba oral**, merecen gran deferencia por los tribunales apelativos. Íd. Ese axioma está basado en consideraciones lógicas, toda vez que el magistrado del foro primario es quien ha tenido la oportunidad de contactar directamente ese tipo de prueba. Más detalladamente, en el citado precedente judicial acotamos que:

> …es el juez sentenciador, ante quien deponen los testigos, quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. Íd., pág. 165.

Ya desde antaño nos pronunciamos de esta forma:

> …y es que no sólo habla la voz viva. También hablan las expresiones mímicas: el color de las mejillas, los ojos, el temblor o consistencia de la voz, los movimientos, el vocabulario no habitual del testigo, son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical y sin embargo, todos estos elementos se pierden en la letra muda de las actas, por lo que se priva al Juez de otras tantas circunstancias que han de valer incluso más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar; **le faltará el instrumento más útil para la investigación de la verdad: la observación.** (Énfasis nuestro) Ortiz v. Cruz Pabón, 103 D.P.R. 939, 947 (1975)[28]

---

[28] Citando a Don Alfonso de Paula Pérez, La prueba de testigos en el proceso civil español, Madrid, ed. Reus, 1968, pág. 7.

Así por ejemplo, en _López Vicil v. ITT Intermedia,Inc._, 142 D.P.R. 857 (1997), el foro de primera instancia se enfrentó a cierta prueba conflictiva respecto a una reclamación por despido injustificado. Tras aquilatarla, el tribunal acogió la versión que ofreció la parte demandante. La parte demandada acudió al foro apelativo, y este a su vez revocó las conclusiones de hechos del juez sentenciador. Ante esta Curia compareció la parte demandante, y al tener la controversia ante nuestra consideración expresamos que:

> Frente a estas determinaciones tajantes y ponderadas del foro de instancia, **¿podía el foro apelativo descartarlas y sustituirlas por sus propias apreciaciones, basadas en un examen del expediente del caso? La respuesta es claramente que no**: erró el foro apelativo al actuar como lo hizo. _Íd._, pág. 864. (Énfasis nuestro).

En síntesis, procede que un foro apelativo otorgue completa deferencia a la apreciación que el juzgador de primera instancia hizo sobre la prueba, esto, toda vez que es quien estuvo en mejor posición de aquilatarla. Esta regla cobra mayor significado en casos en que detalles perceptibles resultan esenciales para graduar adecuadamente la sinceridad de los testimonios. _Pueblo v. Rivera Robles_, 121 D.P.R. 858, 869 (1988). Y valga recalcar, que tal deferencia se otorga "**[m]ás aún, cuando el planteamiento de insuficiencia de prueba se reduce a uno de credibilidad de los testigos**". (Énfasis nuestro). _Pueblo v. Torres Rivera_, 137 D.P.R. 630, 640 (1994).

Ahora bien, la normativa enunciada no es absoluta ni opera de manera omnímoda. Véase Serrano Muñoz v. Auxilio Mutuo, 171 D.P.R. 717 (2007). Si bien es ineludible conferir esa deferencia que ya hemos descrito, podemos preterir la credibilidad que el juzgador le confirió a la prueba testifical que se presentó ante sí en caso de que se haya incurrido en parcialidad, error manifiesto o prejuicio. Íd.

El diccionario de la Real Academia Española define "parcialidad" como el "designio anticipado o prevención en favor o en contra de alguien o algo, que da como resultado la falta de neutralidad o insegura rectitud en el modo de juzgar o de proceder".[29] Por su parte, para que un error sea manifiesto, este debe ser "descubierto, patente, y claro".[30] Es por eso que los supuestos antes mencionados se han catalogado como un abuso de discreción. Flores v. Colberg, 173 D.P.R. 843 (2006). En ese sentido, nuestra jurisprudencia también ha definido conductas que denotan cuando un tribunal se ha extralimitado en el ejercicio de sus facultades. Así, hemos dicho que el abuso de discreción puede manifestarse de varias maneras, tales como:

> … cuando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el

---

[29] Diccionario de la Real Academia Española, Vigésima segunda edición. Disponible en: http://rae.es/rae.html (Visitado por última vez en 4 de febrero de 2013).
[30] Íd.

juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos. Pueblo v. Ortega Santiago, 125 D.P.R. 203, 211-212 (1990).

Así pues, en casos en que el tribunal de instancia incurra en pasión, prejuicio, error manifiesto, y por ende, en abuso de discreción, a pesar de que el juzgador haya observado al testigo, las situaciones reseñadas impiden que se le conceda la deferencia que como regla general se le confiere. Esto se hace necesario para no incurrir en una injusticia. Es decir, un tribunal revisor sólo podrá intervenir con las conclusiones de hechos de un foro primario cuando la apreciación de la prueba no represente el balance más racional, justiciero y jurídico de la totalidad de la misma. Miranda Cruz y otros v. Ritch, 176 D.P.R. 951 (2009); Cárdenas Maxán v. Rodríguez Rodríguez, 125 D.P.R. 702, 714 (1990). Pues, aunque ya hemos dicho en repetidas ocasiones que los juzgadores de hechos merecen respeto y confiabilidad en la apreciación imparcial de la prueba,

> [c]on ello no podemos significar que los juzgadores de hechos no se equivoquen. De ahí que en muchos casos no hemos vacilado en dejar sin efecto un fallo condenatorio cuando un análisis de la prueba que tuvo ante sí el tribunal sentenciador nos deja serias dudas, razonables y fundadas, sobre la culpabilidad del

acusado.        Véase     Pueblo    v.    Carrasquillo Carrasquillo, 102 D.P.R. 545, 551 (1974).

En referencia a los casos de naturaleza criminal, en Pueblo v. Santiago, et. al., supra, págs. 147-148, añadimos que al revisar una determinación atinente a una convicción criminal, la apreciación de la prueba corresponde al foro sentenciador, a no ser que se deba revocar porque (1) hubo prejuicio, parcialidad o pasión, o, (2) que la prueba no concuerda con la realidad fáctica, es increíble o imposible. De no estar presentes esos elementos, la determinación de culpabilidad hecha por el juzgador de hechos "merece gran deferencia". Íd.

C

En el caso de autos, el tribunal intermedio precisó que no le otorgó credibilidad al testimonio del agente Ortiz por cuanto clasificó sus declaraciones como estereotipadas. El testimonio estereotipado es uno que debido a sus particularidades también puede quedar sujeto al rechazo judicial. Sin vacilación, hemos apuntado que un testimonio de ese tipo, cuando es inherentemente irreal o improbable, debe descartarse. Pueblo v. Camilo Meléndez, 148 D.P.R. 539, 559 (1999). Véase también, Pueblo v. Rivera Rodríguez, 123 D.P.R. 467, 480 (1989). Pasemos a discutir cuáles son las características propias de un testimonio de esa naturaleza.

En nuestra jurisdicción, "el uso de declaraciones estereotipadas por cualquier tipo de testigo, en este caso agentes del orden público, debe ser objeto de escrutinio

riguroso para evitar que declaraciones falsas o inexactas, vulneren derechos de ciudadanos inocentes". Pueblo v. Camilo Meléndez, supra, pág. 558.  Por definición, el testimonio estereotipado es "aquel que se reduce a establecer los elementos mínimos necesarios para sostener un delito sin incluir detalles imprescindibles para reforzarlos". Pueblo v. Acevedo Estrada, supra, pág. 93; Pueblo v. Camilo Meléndez, supra. La jurisprudencia puertorriqueña ha hilvanado ciertos parámetros que servirán de guía para evaluar la credibilidad de un testimonio de este tipo. Pasemos a mencionarlos.

De forma reiterada hemos sostenido que el testimonio estereotipado debe examinarse con especial rigor. Pueblo v. Camilo Meléndez, supra.  En ese sentido, tanto los casos de  evidencia abandonada como los casos de actos a plena vista deben, en ausencia de otras consideraciones, inducir sospecha de la posible existencia de testimonio estereotipado. Íd.  Pero, tampoco puede hablarse de testimonio estereotipado meramente por tratarse de una transacción a plena luz del día. Pueblo v. Torres García, 137 D.P.R. 56, 67 (1994).  Ahora bien, esta clase de testimonio puede perder su condición de tal si, yendo más allá de los datos indispensables para probar los requisitos mínimos de un delito, se le rodea de las circunstancias en que funciona el agente, el término de su investigación, los resultados obtenidos fuera del caso en

trámites y otros detalles. Pueblo v. Camilo Meléndez, supra, pág. 559.

Es importante señalar que la presencia de contradicciones o vaguedades en el testimonio debe tender a reforzar el recelo con que hay que escuchar esta clase de declaraciones. Pueblo v. Camilo Meléndez, supra, pág. 559. Ahora bien, el hecho de que un testimonio reúna cualidades distintivas de una prueba estereotipada y deba escudriñarse con especial rigor, no significa que deba descartarse siempre. Sólo debe rechazarse cuando ante el juzgador de los hechos resulte, o deba considerarse, como inherentemente irreal o improbable. Íd. Así, resultaría "**inquietante** que de un **plumazo** [se caracterice] de *testimonio estereotipado* e *increíble*" la versión de uno de los testigos "como única forma de poder revocar" aun cuando el Tribunal de Primera Instancia ha rechazado esa contención. Pueblo v. Rivera Colón, 128 D.P.R. 672, 703 (1991) (Opinión disidente del Juez Asociado Negrón García).

Expuesto el marco doctrinal que precede, justipreciemos los señalamientos del Ministerio Público.

### III

Los errores que nos presenta el Procurador General básicamente se dirigen a cuestionar el proceder del foro intermedio revisor en cuanto a dos aspectos esenciales de nuestro sistema probatorio. Primero, nos señala que el tribunal intermedio incidió al interferir con una labor

que le corresponde de manera principalísima al foro juzgador: otorgar credibilidad a la prueba testifical. En segundo lugar, alude a que la prueba que presentó fue suficiente en derecho para rebatir la presunción de inocencia que le amparaba al recurrido. Por encontrarse íntimamente relacionados, discutiremos ambos señalamientos en conjunto.

Como indicáramos, las reglas que rigen el derecho probatorio permiten que una parte pruebe su caso mediante la presentación de un solo testigo. Claro está, ese supuesto se encuentra supeditado a que el mismo goce de la credibilidad necesaria a fin de que el magistrado que sopese su testimonio concluya que los eventos ocurrieron tal como dicho testigo lo sostuvo. La normativa jurisprudencial nos ilustra que para que el testimonio de un testigo sea creíble, no puede ser físicamente imposible o que por su comportamiento en la silla testifical deba descartarse. Además, dentro de la esfera de lo que constituye un testimonio estereotipado, también habría que evaluar si el testimonio particular se circunscribe a dar declaraciones repetitivas en cuanto a elementos básicos del delito, sin ofrecer descripciones adicionales sobre los eventos que rodearon el incidente que motivó la acusación. Y aún de ser estereotipado, no implica que deba ser rechazado automáticamente.

Todos los elementos señalados sirven para evaluar la credibilidad del testimonio del agente Ortiz, esto, junto

a un análisis en cuanto a si el testimonio, de haber sido creíble, es suficiente para probar más allá de duda razonable que el señor De Jesús cometió el delito de agresión. Esto es, justipreciar si la prueba de cargo fue suficiente en derecho para probar los elementos del Art. 121 del Código Penal de Puerto Rico de 2004, 33 L.P.R.A. sec. 7449. Es en este punto que convergen los asuntos de suficiencia de la prueba y deferencia al foro revisor que nos plantea la parte peticionaria. Es evidente que por nuestra condición de ser un foro revisor, no podemos observar los ademanes, gestos, tono de voz, y todas aquellas manifestaciones perceptibles a los sentidos que sí pudo observar el juzgador de los hechos de instancia cuando el agente Ortiz prestaba sus declaraciones. Por tanto, examinaremos si dentro de los contornos de lo que debemos auscultar, la determinación de credibilidad que hizo el foro de instancia rebasó los límites de la sana discreción judicial y, si tal como lo concluyó el foro apelativo, la prueba del Estado debió descartarse por ser estereotipada.

En primer lugar, tanto en el foro apelativo, como ante esta Curia, el señor De Jesús no señaló actuación alguna por parte del TPI que constituyera pasión, error manifiesto o algún prejuicio injusto. En consecuencia, ante la ausencia de ello, procede conferirle deferencia a la credibilidad que le otorgó el foro sentenciador al testimonio del agente Ortiz. En ese contexto, procede que

examinemos si el mismo resulto increíble, físicamente imposible y por consecuente, insuficiente para probar el delito de agresión.

El Art. 121 del Código Penal de 2004, *supra*, tipifica el delito de agresión estableciendo que "toda persona que ilegalmente por cualquier medio o forma cause a otra una lesión a su integridad corporal incurrirá en delito menos grave". Una lectura de la precitada disposición refleja que para que se configure ese delito es necesario que concurran, y se prueben, los siguientes elementos: (1) que el imputado mediante cualquier medio o forma (2) causó una lesión a la integridad corporal de otra persona y (3) que dicha actuación se perpetró de manera ilegal. En otras palabras, sin que existiese justificación legal alguna para que el imputado incurriera en la mencionada conducta. Hemos examinado con rigor la transcripción de la prueba oral vertida en el juicio y el texto del precitado estatuto. De ese ejercicio podemos concluir razonablemente que la prueba del Ministerio Público fue suficiente para probar más allá de duda razonable que el señor De Jesús incurrió en conducta delictiva constitutiva de agredir al agente Ortiz. Por su parte, el recurrido hace especial hincapié en ciertas manifestaciones del testigo, que según él, constituyen contradicciones fundamentales en cuanto a los hechos del caso, empero, un análisis integral del testimonio del agente Ortiz nos lleva a colegir lo contrario. Veamos.

Si bien es cierto que el agente Ortiz ofreció detalles diferentes en algunas porciones de su testimonio – por ejemplo, declaró que no llegó a caminar cuando se bajó de su bicicleta y luego aclaró que caminó los pasos suficientes; indicó que el señor De Jesús se bajó de su bicicleta y simultáneamente la empujó y luego indicó que se desmotó primero de la bicicleta y que luego la empujó- cabe destacar que esas diferencias son mínimas y no inciden sobre elementos esenciales que conviertan su testimonio en uno imposible o físicamente increíble. Al examinar la transcripción de la prueba oral queda meridianamente claro que el agente Ortiz testificó sobre los elementos necesarios para que el Ministerio Público pudiera probar más allá de duda razonable que el señor De Jesús cometió el delito de agresión. El agente perjudicado fue enfático al manifestar que tras intentar detener al señor De Jesús, este último, sin justificación alguna para ello, le lanzó la bicicleta hacia sus pies. Ese impacto provocó que el agente cayera al suelo y sufriera las lesiones por las cuales acudió al Centro de Diagnóstico y Tratamiento para recibir asistencia médica. En su comparecencia, el recurrido se limita a atacar la credibilidad de este testigo, bajo los fundamentos que ya hemos discutido. En cuanto a eso, a tenor con la norma jurisprudencial aplicable, debemos puntualizar que era precisamente al foro sentenciador a quien le correspondía dirimir esas discrepancias y así lo hizo. Recordemos que

"cuando un testigo se contradice, lo que se pone en juego es su credibilidad y es al jurado o al juez de instancia a quien corresponde resolver el valor de su restante testimonio". Pueblo v. Cabán Torres, 117 D.P.R. 645, 658 (1987). Por lo tanto, en ausencia de pasión, prejuicio o parcialidad en su dictamen de culpabilidad, no debemos intervenir con el criterio del Tribunal de Primera Instancia.

Por otro lado, la disidencia supedita la credibilidad del agente Ortiz Nevárez al contenido del informe de incidente que se presentó como evidencia. Acota, que ese documento se limita a señalar únicamente que el agente fue agredido pero sin especificar la manera en que ocurrió ese evento. En este punto es importante aclarar que ese informe no fue la única prueba que tuvo el Tribunal de Primera Instancia ante sí, pues también pudo sopesar el testimonio del propio perjudicado. Además, no existe norma jurisprudencial alguna que nos obligue a descartar la credibilidad conferida por el juzgador a las manifestaciones verbales que un testigo hizo en el juicio por el mero hecho de que el informe de incidente preparado por un oficial del orden público no contenga todos y cada uno de los detalles que dicho testigo haya manifestado en la sala del tribunal. Esa exigencia desvirtuaría nuestro sistema de derecho probatorio tal y como está contemplado en las Reglas de Evidencia. Así también, la disidencia le resta mérito a la credibilidad que el Tribunal de Primera

Instancia le otorgó al agente perjudicado debido a que en la cinta de video que se admitió en evidencia aparecen las expresiones de una ciudadana, las cuales "concuerdan con lo declarado por el señor De Jesús Mercado".[31] En cuanto a esto cabe señalar que las propias Reglas de Evidencia estipulan que "[l]a juzgadora o el juzgador de hechos no tiene la obligación de decidir de acuerdo con las declaraciones de cualquier cantidad de testigos que no le convenzan contra un número menor u otra evidencia que le resulte más convincente" 32 L.P.R.A. Ap. VI R. 110(e). Además, la referida ciudadana no se sentó en la silla de los testigos por lo que el juzgador de hechos no tuvo la oportunidad de evaluar la veracidad de sus declaraciones en el juicio.

De otra parte, en la sentencia del Tribunal de Apelaciones se indicó que no se le daría credibilidad al testimonio del agente por ser uno estereotipado. Al emitir su curso decisorio, ese foro no explica las razones por las cuales colige que el testimonio del agente Ortiz resultó ser estereotipado en cuanto a cómo ocurrió la agresión. En cambio, se limitó a señalar lo siguiente:

> "[s]i bien es cierto que el Agente Ortiz declaró haber sufrido unas lesiones corporales a causa de las acciones del señor De Jesús, no olvidemos que el testimonio vertido por este fue uno estereotipado, al cual le otorgamos muy poca credibilidad".

En otra parte de la sentencia adujo lo siguiente:

---

[31] Véase, Opinión disidente del Juez Asociado señor Estrella Martínez, pág. 3.

"[e]s nuestra opinión que el Agente Ortiz prestó un testimonio estereotipado a los fines de justificar un arresto sin orden contra el señor De Jesús. Este se limitó a esbozar los elementos mínimos del delito sin entrar en detalles en específico".[32]

Estos son todos los fundamentos contenidos en la sentencia recurrida para sostener la conclusión de que el testigo del Ministerio Público brindó un testimonio estereotipado. Es motivo de preocupación que sin explicación alguna se catalogara el testimonio del agente Ortiz de esa manera. Ante ello, retomamos las expresiones del Juez Asociado Negrón García en <u>Pueblo v. Rivera Colón</u>, supra, cuando puntualizó que resultaba "inquietante que de un plumazo [se caracterizara] de *testimonio estereotipado* e *increíble"* la versión de uno de los testigos "como única forma de poder revocar". En nuestra función revisora hemos examinado cuidadosamente la transcripción del testimonio del agente Ortiz, y colegimos que no se limitó a recitar o repetir únicamente los elementos mínimos del delito de agresión. Tanto en el examen directo como en el contrainterrogatorio, el testigo abundó ampliamente sobre los hechos antes, durante y después del incidente. Salvo mínimas e insignificantes contradicciones, fue consistente en describir la forma en que el recurrido lo agredió con una bicicleta. En vista de ello, es forzoso concluir que el testimonio del agente perjudicado no fue uno estereotipado. Además, recordemos que de haber sido ese el caso, aun así el TPI no estaba obligado a descartar el

---

[32] Apéndice de la petición de *certiorari*, pág. 11.

mismo, puesto que lo que debía hacer era mirarlo con recelo y sospecha.

Por último, el Tribunal de Apelaciones fundamentó su decisión revocatoria en que de las fotos ni de la grabación en vídeo se desprendía que el recurrido hubiese agredido al agente Ortiz. Ese proceder no exige otro análisis más allá de detallar que el propio testigo que grabó la cinta afirmó ante la juez de instancia que no observó personalmente el incidente de la agresión. Más aun, se limitó a describir que vio y grabó cuando el agente Ortiz seguía al señor De Jesús, pero que detuvo la grabación por cuestiones técnicas de su cámara. Así también, relató que cuando continuó grabando, ya el recurrido se encontraba bajo arresto. No grabó el momento de la agresión. Tan es así que afirmó que el único testigo que podía decir lo que había pasado antes del arresto era el propio agente Ortiz, testigo a quien el TPI le confirió absoluta credibilidad. De igual forma, de las fotografías no surge evidencia alguna que resulte ser de naturaleza exculpatoria.

Para finalizar, luego de estudiar el expediente en su totalidad y la transcripción de los testimonios vertidos en el juicio, no observamos indicio alguno de que el juzgador de los hechos hubiere actuado con prejuicio, pasión o parcialidad o que existiera algún error manifiesto. Pues así como lo hiciéramos en un caso de antaño, hoy también

[h]emos examinado los elementos probatorios aportados al juicio, y encontramos que ciertamente hay contradicción entre las declaraciones de los testigos de El Pueblo de Puerto Rico y los de la defensa, pero la corte inferior que estaba en mejores condiciones que nosotros para dirimir ese conflicto, lo resolvió en contra del acusado, y como no se nos ha demostrado que obrara influida por pasión, prejuicio o parcialidad, o con manifiesto error, tenemos que aceptar como verdad legal su fallo de convicción, el que se sostiene por las declaraciones de varios testigos, sin que pueda por tanto afirmarse que sea contrario a las pruebas.[33]

Así pues, teniendo aun plena vigencia los precitados pronunciamientos, y a la luz del análisis de los hechos y del derecho aplicable, concluimos que no estamos ante un problema de suficiencia de la prueba, como tampoco ante un testimonio que pudiera considerarse estereotipado. Por ello, es forzoso colegir que el foro recurrido incidió en los errores señalados.

IV

Por los fundamentos que anteceden, revocamos la sentencia del Tribunal de Apelaciones en cuanto a aquella parte que revirtió el fallo de culpabilidad por el delito de agresión. En consecuencia, restituimos la sentencia del Tribunal de Primera Instancia en cuanto encontró culpable al señor De Jesús por el delito de agresión en su modalidad menos grave.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió una Opinión Disidente a la cual

---

[33] Pueblo v. Pruna, 17 D.P.R. 1053 (1911).

se unieron el Juez Presidente señor Hernández Denton y la Juez Asociada señora Rodríguez Rodríguez. La Jueza Asociada señora Fiol Matta, emite la siguiente expresión: "La Jueza Asociada señora Fiol Matta disiente porque no se presentó prueba que sostenga la determinación de culpabilidad contra el señor Alberto de Jesús Mercado por el delito de agresión".


                              Aida Ileana Oquendo Graulau
                              Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.                        CC-2011-1047
Certiorari

Alberto De Jesús Mercado

    Recurrido

Voto disidente emitido por el Juez Asociado SEÑOR ESTRELLA MARTINEZ, al cual se unen el Juez Presidente SEÑOR HERNÁNDEZ DENTON y la Juez Asociada SEÑORA RODRÍGUEZ RODRÍGUEZ.

San Juan, Puerto Rico, a 2 de mayo de 2013.

> "Hasta tanto se disponga de un método infalible para averiguar sin lugar a dudas dónde está la verdad, su determinación tendrá que ser una cuestión de conciencia. Ese deber de conciencia no para en el fallo del tribunal sentenciador. Nosotros también tenemos derecho a tenerla tranquila".[34]

Por resultar insatisfactoria la prueba presentada por el Ministerio Público para derrotar la presunción de inocencia que cobija al Sr. Alberto De Jesús Mercado (De Jesús Mercado), ejerzo mi deber de disentir como cuestión de conciencia.

Al señor De Jesús Mercado se le imputaron los delitos de alteración a la paz y agresión en su modalidad menos grave.

---

[34]Pueblo v. Carrasquillo Carrasquillo, 102 D.P.R. 545, 552 (1974).

Durante el juicio, el Ministerio Público presentó el testimonio del agente perjudicado, Sr. Víctor Ortiz Nevares, adscrito a la unidad ciclista del Precinto 166 de Puerta de Tierra. El agente Ortiz Nevares relató que el día de los hechos se encontraba vigilando las inmediaciones de la Avenida Constitución por razón de una manifestación de los estudiantes de la Universidad de Puerto Rico, frente al área del Capitolio. Alrededor de las 5:00 de la tarde, el agente Ortiz Nevares transitaba en su bicicleta oficial por la referida avenida y divisó la presencia del señor De Jesús Mercado, quien también conducía una bicicleta.

El agente Ortiz Nevares comenzó a vigilar al acusado, siguiéndole en su bicicleta, porque este es "reconocido".[35] El agente testificó que el señor De Jesús Mercado le profirió palabras soeces, lo que le alteró la paz.

Con respecto al delito de agresión, el Ministerio Público presentó solamente la declaración del agente Ortiz Nevares, quien expresó que cuando ambos se desmontaron de las respectivas bicicletas, el señor De Jesús Mercado le lanzó la suya a los pies. Ello, según este agente, provocó que perdiera el balance y se cayera al suelo, halando al señor De Jesús Mercado por la camisa para llevarlo al suelo también.[36] Sin embargo, del vídeo presentado y admitido como evidencia durante el juicio, surge otra versión de los hechos manifestada por la ciudadana Linnette Rondón, minutos luego del incidente. La señora Rondón presenció la

---

[35] Véase vídeo admitido en evidencia y Apéndice, pág. 46 de la Petición de Certiorari.

[36] Véase Apéndice, pág. 50 de la Petición de Certiorari.

persecución del señor De Jesús Mercado y explicó lo que vio al fotoperiodista. Ésta declaró que "el muchacho [Alberto de Jesús Mercado] estaba por allí [calle San Martín] parado en una bicicleta y el guardia lo detuvo, cuando el guardia lo detuvo él se le escapó y venía en bicicleta y el guardia lo tumbó". Este testimonio contradice lo relatado por el agente Ortiz Nevares, quien en ningún momento expresó que el señor De Jesús Mercado se detuvo en la calle San Martín. Sin embargo, el testimonio de esta ciudadana concuerda con lo declarado por el señor De Jesús Mercado al momento de su arresto, este manifestó que el oficial "me quería dar una pela allá abajo [calle San Martín]", "viste como se me tiró encima…el de la bicicleta". Ambos testimonios emitidos espontáneamente concuerdan en que hubo algún tipo de intercambio cercano en la calle San Martín entre el acusado y el agente Ortiz Nevares, y luego este último tumbó al primero. Ello es contrario a la versión del agente Ortiz Nevares en corte, quien todo el tiempo sostuvo que entre él y el acusado había 20 pies de distancia.[37]

Por su parte, durante el altercado que consta en vídeo, el agente Ortiz Nevares declaró como motivo para el arresto que el acusado se le "cagó" en su madre, sin hacer referencia alguna al incidente de la bicicleta ni mencionar que el acusado le lanzara la bicicleta a sus pies. Sin embargo, el Informe de Incidente, redactado por el agente Luis A. Serrano Cabán a base del testimonio del agente Ortiz

---

[37]Véase Apéndice, pág. 49 de la Petición de Certiorari.

Nevares, no identifica los alegados insultos proferidos por el acusado como los causantes del arresto. Este informe simplemente dispone que se arrestó por agredir al agente, sin mencionar la manera de la agresión o la existencia de una bicicleta. Ello demuestra inconsistencia en las versiones esbozadas por el agente Ortiz Nevares como causa del arresto y la poca credibilidad que merecen sus declaraciones al respecto. Para colmo, el agente Ortiz Nevares adujo que 40 universitarios le lanzaban simultáneamente piedras a su cuerpo, mientras intervenía con el señor De Jesús Mercado. Sin embargo, minutos después estaba ileso brindando declaraciones a la prensa en el vídeo admitido como evidencia, sin que se percibiera visualmente el efecto de tener a 40 universitarios lanzándole piedras simultáneamente a su cuerpo.

Lo anterior, sumado al hecho de que el agente Ortiz Nevares se mantuvo persiguiendo al señor De Jesús Mercado sin razones aparentes, solo porque este es "reconocido"[38], nos llevan a concluir que las motivaciones del arresto fueron irrazonables, sin causa probable y, por ende, violatorio de las garantías constitucionales que amparan a todo ciudadano.

La evaluación de la prueba es un ejercicio valorativo del juzgador de los hechos sobre la totalidad de la evidencia presentada utilizando el sentido común, la lógica y la experiencia para determinar cuál es la versión que debe prevalecer sobre otra. Pueblo v. Colón Castillo, 140 D.P.R.

564, 578 (1996). En casos donde existan conflictos de prueba, es la función del juzgador de los hechos dirimir la credibilidad que le merece el testimonio que escuchó y presenció. Pueblo v. Bonilla Ortiz, 123 D.P.R. 434, 442 (1989); Pueblo v. Cabán Torres, 117 D.P.R. 645, 653-654 (1986). De igual forma, el hecho de que un testigo se contradiga no conlleva, por sí solo, el rechazo de la totalidad de lo que haya declarado. Pueblo v. Chévere Heredia, 139 D.P.R. 1, 15-16 (1995).

Como norma general, en nuestra función apelativa prevalece la abstención a intervenir con el valor que le mereció la prueba al juzgador de instancia en ausencia de pasión, prejuicio, parcialidad, error manifiesto o en aquellas circunstancias que la hagan imposible o increíble. Pueblo v. Acevedo Estrada, 150 D.P.R. 84, 99 (2000). Sin embargo, lo anterior no implica que el juicio del juzgador sea infalible. El fundamento consiste en que como cuestión de derecho, la determinación de si se probó la culpabilidad del acusado más allá de duda razonable es revisable en apelación; ello así pues la apreciación de la prueba desfilada en juicio es un asunto combinado de hecho y derecho. Pueblo v. García Colón I, 182 D.P.R. 129, 174-175 (2011); Pueblo v. Cabán Torres, *supra*, pág. 655.

La norma jurídica establece que le corresponde al Estado en todo caso penal demostrar la culpabilidad del imputado del delito más allá de duda razonable. Como consecuencia, el Estado debe presentar prueba necesaria para

---

[38]Véase vídeo admitido en evidencia y Apéndice,

establecer, como mínimo, todos los elementos del delito. Ésta debe ser "suficiente y satisfactoria, es decir, prueba que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido". Pueblo v. Irizarry, 156 D.P.R. 780, 787 (2002). Véanse también: Pueblo v. García Colón I, *supra*, págs. 174-175; Pueblo v. Santiago et al., 176 D.P.R. 133, 142-143 (2009); Pueblo v. Colón Castillo, *supra*, págs. 581-582. Claro está, no se requiere que el Estado destruya toda duda posible ni pruebe la culpabilidad del acusado con certeza matemática. Véase, Pueblo v. Maisonave Rodríguez, 129 D.P.R. 49, 65 (1991). Ahora bien, la duda razonable que opera en el ordenamiento procesal criminal no es una duda especulativa, ni imaginable, ni cualquier duda posible, sino que más bien "es aquella duda fundada que surge como producto del raciocinio de todos los elementos de juicio envueltos en un caso". Pueblo v. Santiago et al., *supra*, pág. 142; Pueblo v. Irizarry, *supra*, pág. 788. Cuando hay insatisfacción con la prueba existe duda razonable.

Con respecto a la prueba presentada en este caso, no cabe duda que el agente Ortiz Nevares testificó sobre los hechos relacionados a la alegada alteración a la paz. Ello también surgió del vídeo admitido como prueba. Sin embargo, en cuanto al delito de agresión el agente Ortiz Nevares limitó su testimonio a indicar que el señor De Jesús Mercado empujó la bicicleta en la que montaba hacia los pies del agente. El Informe de Incidente, redactado por el agente

---

pág. 46 de la Petición de Certiorari.

Luis A. Serrano Cabán, simplemente dispone que se arrestó al señor De Jesús Mercado por agredir al agente sin especificar cómo tuvo lugar la misma. Notamos igualmente que la situación acontece cuando el agente Ortiz Nevares identifica al señor De Jesús Mercado y se da a la tarea de seguirlo en la bicicleta únicamente por  razón de quién era. Por otra parte, del referido vídeo resalta el testimonio espontáneo del señor De Jesús Mercado y de una ciudadana, el primero indicó que el agente Ortiz Nevares se le lanzó encima. La segunda, corroboró ello al manifestar que cuando el agente Ortiz Nevares detuvo al imputado, éste se le escapó y el guardia lo tumbó. Además, el vídeo capta al propio agente Ortiz Nevares quien exteriorizó que la razón de intervenir con el imputado fue porque profirió palabras soeces. En ese momento el agente Ortiz Nevares no divulgó que el imputado le hubiera agredido.

Reconozco las limitaciones de la función revisora en este tipo de caso. Sin embargo, ello no implica que, en el afán de ceñirnos a la doctrina de la deferencia, permitamos que prevalezca un fallo condenatorio cuando estamos convencidos racionalmente de que un análisis integral de la prueba no establece la culpabilidad del acusado más allá de duda razonable. En el caso que nos ocupa, no tengo duda de que el Ministerio Público no probó su caso más allá de duda razonable.

Al analizar la prueba del caso de epígrafe, no debemos obviar que "los criterios que guían la evaluación de la prueba en un juicio son idénticos a aquellos que utilizamos

en la vida cotidiana, tales como el comportamiento y el carácter de quienes dan su versión de los hechos, la parcialidad que pueda afectarles, la naturaleza de la declaración y otros". Pueblo v. Colón, Castillo, *supra*, pág. 564. A mi juicio, la prueba presentada no es suficiente en derecho para derrotar la presunción de inocencia que cobija al señor De Jesús Mercado. No se trata solamente de la credibilidad que merezca el testimonio del agente Ortiz Nevares durante el juicio. Esas declaraciones no pueden ser descartadas arbitrariamente. Sin embargo, y en lo particular del caso ante nos, la poca evidencia recibida por el juzgador de hechos incluye un vídeo el cual tenemos idéntica oportunidad de observar. Éste fue tomado durante el incidente que dio lugar a las imputaciones contra el señor De Jesús Mercado. Ello nos permite evaluar el comportamiento de los involucrados y sus declaraciones al momento de ocurrir los alegados hechos. Aunque este vídeo no refleja el momento de la alegada agresión, nos permite examinar lo acaecido en el calor de los acontecimientos. En ese instante, el agente Ortiz Nevares en ningún momento señaló o apuntó a una agresión por parte del imputado. Solamente indicó que lo detenía debido a que éste le alteró la paz mentándole la madre; delito que no está ante nuestra consideración, ya que el Ministerio Público se allanó a la revocación del fallo condenatorio por el Tribunal de Apelaciones. A su vez, del vídeo surge el testimonio de una ciudadana que presenció los eventos. Ésta indica que el agente Ortiz Nevares intervino con el señor De Jesús Mercado

y lo tumbó. Dichas expresiones son similares a las realizadas por el señor De Jesús Mercado y captadas en la referida cinta.

La mayoría de este Tribunal reconoce en su Sentencia las contradicciones del agente. Sin embargo, el análisis de las contradicciones se limitó a su testimonio. En el presente escrito, hemos constatado que a la luz del resto de la evidencia admitida también existen contradicciones mayores a las reconocidas por la mayoría. La evidencia ilustrativa admitida permite constatar la incomprensibilidad del único testimonio del Ministerio Público y siembra serias dudas en torno al descargo de la obligación de probar el caso más allá de duda razonable.

Ante tal situación, no puedo evitar expresar mi insatisfacción con la prueba a base de la cual se pretende derrotar la presunción de inocencia que le cobija al señor De Jesús Mercado. Mucho menos puedo reinstalar un fallo de culpabilidad más allá de duda razonable.

Por lo expuesto, disiento de la sentencia hoy emitida.


                                    LUIS F. ESTRELLA MARTÍNEZ
                                           Juez Asociado